IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ISAIAH HARRIS, *pro se* | ) | CASE NO. 1:14-CV-00846 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| KIMBERLY CLIPPER, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner Isaiah Harris ("Harris"), challenges the constitutionality of his convictions in the cases of *State v. Harris*, Lorain County Court of Common Pleas Case Nos. 08-CR-075721, 08-CR-076357, and 08-CR-077230. Harris, *pro se*, filed a Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on April 18, 2014. On June 20, 2014, Warden Kimberly Clipper ("Respondent") filed an Answer/Return of Writ.[1] (ECF No. 7.) On February 6, 2015, Harris filed a motion for leave to amend his petition, adding two new grounds for relief, which the Court granted. (ECF Nos. 16-18.) Respondent filed an Amended Return of Writ on March 19, 2015. (ECF No. 19.) Harris filed a Traverse on April 16, 2015. (ECF No. 20.) For reasons set forth in detail below, it is recommended that Harris's petition be DISMISSED as time barred.

---

[1] Two motions to expand the record, filed by Harris, were denied, as they sought to add evidence to the record that was immaterial and irrelevant. (ECF Nos. 9, 13, 14, 15.)

## I. Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Harris's conviction as follows:

> [*P2] Mr. Harris started dating K.T. when they were 16 years old. They have three children together. According to K.T., they were living together on March 26, 2008, when they had an argument and she told him to leave. She said that he punched her and, after she was on the ground, kicked her in the head. She suffered a busted lip and bruising around her nose. According to Mr. Harris, he was dating another woman at the time. He said that he, K.T., and the new girlfriend met that day and that K.T. was injured when the two women began fighting. He said that K.T. blamed him for her injuries because she was angry that he was with someone else. The Grand Jury indicted him for domestic violence and felonious assault.
>
> [*P3] Following that incident, a municipal court judge issued a temporary protection order, prohibiting Mr. Harris from committing acts of abuse against K.T. According to K.T., however, on June 30, 2008, Mr. Harris came to her house and began arguing with her about her having lied to him about a trip she had taken with a friend. During the argument, he punched, choked, and kicked her. He also swung a hammer around declaring that he was going to "bash [her] brains in with it." According to Mr. Harris, K.T. came over to his apartment that day and got into a fight with another woman he was dating. The Grand Jury indicted him for domestic violence and violating a protection order. After the incident, the municipal court issued another temporary protection order, prohibiting Mr. Harris from coming near K.T. or having any contact with her.
>
> [*P4] K.T. said that, on November 12, 2008, Mr. Harris called her and told her that he wanted to see her. Because she was about to go to bed, she told him no and hung up. A few minutes later, he kicked open the door of her house. She met him on the staircase, and they went downstairs together to the living room. According to K.T., he pressed the blade of a pocket knife against her face and made her perform fellatio on him. After it was over, he told her that, if they could not be together, then they might as well just kill each other. He refused to leave at first because he thought she would again report what had happened to the police.

> He also told her that, if he found out that she had been seeing anyone else, he would kill her. According to Mr. Harris, he did not go to K.T.'s house that day. He alleged that she had fabricated her entire story. The Grand Jury indicted him for kidnapping, rape, aggravated burglary, intimidation, domestic violence, and violating a protection order.
>
> [*P5] Mr. Harris waived his right to a jury trial and moved to have the cases tried together. Regarding the March 2008 incident, the trial court found him guilty of domestic violence. Regarding the June 2008 incident, it found him guilty of domestic violence and violating a protection order. Regarding the November 2008 incident, it found him guilty of rape, aggravated burglary, intimidation, domestic violence, and violating a protection order.

*State v. Harris*, 2010-Ohio-1081 at ¶¶2-5, 2010 Ohio App. LEXIS 891 (Ohio Ct. App., Mar. 22, 2010).

## II. Procedural History

**A. Conviction**

During the April 2008 term, a Lorain County Grand Jury charged Harris with one count of felonious assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(1) and one count of domestic violence in violation of O.R.C. § 2919.25(A). (ECF No. 7-3, Exh. 3.) During the July 2008 term, a Lorain County Grand Jury charged Harris with one count of domestic violence in violation of O.R.C. § 2919.25(A) and one count of violating protection order or consent agreement in violation of O.R.C. § 2919.27(A)(1). (ECF No. 7-5, Exh. 5.) Finally, during the October 2008 term, a Lorain County Grand Jury charged Harris with one count of kidnapping in violation of O.R.C. § 2905.01(A)(4), one count of rape in violation of O.R.C. § 2907.02(A)(2), two counts of aggravated burglary in violation of O.R.C. § 2911.11(A)(1) & (2), one count of intimidation in violation of O.R.C. § 2921.03(A), one count of domestic violence in violation of O.R.C. § 2919.25(A), and one count of violating protection order or consent agreement in

violation of O.R.C. § 2919.27(A)(1). (ECF No. 7-7, Exh. 7.) The three cases were consolidated. (ECF No. 7, Exhs. 2, 4 & 6.)

On May 20, 2009, after a bench trial, Harris was found guilty of the following offenses: from the first indictment, felonious assault and domestic violence; from the second indictment, domestic violence and violating protection order or consent agreement; and, from the third indictment, rape, both counts of aggravated burglary, intimidation, domestic violence, and violating protection order or consent agreement. (ECF No. 7, Exhs. 7, 8, 9 & 10.) The same date, the trial court sentenced Harris to an aggregate prison term of 23 years and six months. (ECF No. 7-10, Exh. 10.)

**B.  Direct Appeal**

On June 17, 2009 and June 22, 2009, Harris, through new counsel, filed three separate Notices of Appeal[2] with the Court of Appeals for the Ninth Appellate District ("state appellate court") raising the following assignment of error:

> The verdict in this case is against the sufficiency and manifest weight of the evidence and should be reversed because it violates the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio.

(ECF Nos. 12, 14, 16 & 18.)

On March 22, 2010, Harris's convictions were affirmed. *State v. Harris*, 2010 Ohio App. LEXIS 891, 2010-Ohio-1081 (Ohio Ct. App., Mar. 22, 2010).

On May 3, 2010, Harris, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio raising the same, single assignment of error as before the state appellate court. (ECF No. 7,

---

[2] The three appellate cases were consolidated. (ECF No. 7, Exhs. 13, 15 & 17.)

Exhs. 22 & 23.)

On August 25, 2010, the appeal was dismissed as not involving any substantial constitutional question. (ECF No. 7, Exh. 24.)

**C.    Federal Habeas Petition**

On April 18, 2014, Harris filed a Petition for Writ of Habeas Corpus asserting the following grounds for relief:[3]

GROUND ONE: Actual Innocence

Supporting Facts: Petitioner asserts that the underlying facts shall show by clear and convincing evidence that, but for constitutional [sic] in the trial court, no jury would have found petitioner guilty.

GROUND TWO: Insufficienc[t] Evidence

Supporting Facts: The trial court violated petitioner's United States Constitutional Rights under the Fifth, Sixth, and Fourteenth Amendments: when it found defendant guilty of one count of rape, two counts of Agg. Burglary, three counts of Domestic Violence, one count of Intimidation, and two counts of Violating a Protective Order: where the prosecution (State) failed to prove each essential element of said crimes.

GROUND THREE: Equitable Tolling should be applied to habea[s] petition

Supporting Facts: Several State Correctional Institutions denied Pro se prisoner meaningful access to the courts: thus preventing him from preparing and filing his 28 U.S.C. § 2254(d)(1)(A). Said institutions had extensive periods where petitioner had no, or very minimal access to the law material, and legal document coping [sic] access.

GROUND FOUR: Petitioner's direct appeal appellate counsel was constitutionally ineffective where counsel failed to bring petitioner aware of: (1) the existence of the State's O .R.C. 2953.21 post-conviction proceeding; and (2) that post-conviction was the proper vehicle to raise the constitutional questions

---

[3] Harris swears that he placed the petition into the prison mailing system four days earlier, on April 14, 2014. For the purposes of this petition, the four day difference is immaterial.

that was dependent on material which existed outside the record.

Supporting Facts: Appellate counsel violated petitioner's Sixth and Fourteenth Amendment Rights, under the United States Constitution where counsel failed to bring petitioner aware of the Post-conviction remedy to raise "Brady Material", Exculpatory Evidence that would impeach the State's sole witness's credibility in which Petitioner's conviction depends.

Ground Five: Petitioner's direct appeal appellate counsel was constitutionally ineffective where counsel failed completely to inform petitioner when the record was filed within the court of appeals: which triggered the 180-day period for filing a timely post-conviction petition under O.R.C. 2953.21.

Supporting Facts: Appellate counsel violated petitioner's Sixth and Fourteenth Amendment Rights, under the United States Constitution,

(ECF Nos. 1 & 16.)

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1) & (2).

A.  **One-Year Limitation**

In the instant action, Respondent asserts that Harris's petition is time-barred because he did not file within the one-year limitations period. Respondent contends that Harris's conviction became final on November 24, 2010, ninety days after the Supreme Court of Ohio dismissed his appeal. (ECF No. 19 at 13.)

The AEDPA tolls the one-year limitations period during the time "'a properly filed application for State postconviction or other collateral review . . . is pending.' § 2244(d)(2)." *Evans v. Chavis*, 546 U.S. 189, 191 (2006); *Carey v. Saffold*, 536 U.S. 214 (2002); *accord Matthews v. Abramajtys*, 319 F.3d 780, 787 (6th Cir. 2003). "The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, provided that the filing of the notice of appeal is timely under state law." *Id.*

Only "properly filed" applications for postconviction relief or collateral review toll the statute of limitations, and "a state postconviction petition rejected by the state court as untimely is not 'properly filed' within the meaning of § 2244(d)(2)." *Allen v. Siebert*, 552 U.S. 3, 128 S. Ct. 2, 3 (2007); *Pace v. DiGuglielmo,* 544 U.S. 408, 125 S.Ct. 1807 (2005) ("time limits, no matter their

-7-

form, are 'filing' conditions, and a state postconviction petition is therefore not 'properly filed' if it was rejected by the state court as untimely"); *Monroe v. Jackson*, 2009 WL 73905, *2, Case No. 2:08cv1168 (S.D. Ohio Jan. 8, 2009). A timely filed state post-conviction matter, however, cannot serve to toll a statute of limitations which has already expired before the motion was filed. *See Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). Section 2244(d)(2)'s tolling provision "does not ... 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman*, 346 F.3d at 602 (citation omitted). Further, if a state court ultimately denies a petition as untimely, that petition was neither properly filed nor pending and a petitioner would not be entitled to statutory tolling. *See Monroe* at *2; *Thorson v. Palmer*, 479 F.3d 643, 645 (9th Cir. 2007).

Here, the Respondent asserts that Harris did not make any collateral filings in the state courts and statutory tolling, therefore, is inapplicable.[4] (ECF No. 7 at 11.) It does not appear that Harris filed any post-conviction petitions. He fails to report any such filings in his petition (ECF No. 1), and the dockets of his cases reflect none. (ECF No. 7, Exhs. 2, 4 & 6.) Therefore, without the benefit of statutory tolling, Harris's petition was due no later than November 23, 2011. Harris did

---

[4] In his traverse, Harris alleges that appellate counsel did not inform him when the record was filed and, therefore, he was unaware of the 180 day time limit for filing a post-conviction petition under O.R.C. § 2953.21(A)(2). (ECF No. 20 at 27.) Harris does not appear to contest that he did not file *any* post-conviction petitions, timely or otherwise. His allegation that his lack of knowledge of the deadlines prevented him from pursuing any post-conviction relief is, therefore, not credible. Harris's implied argument that he would have filed a timely post-conviction petition (had he been informed of the date the record was filed), which might have tolled the statute of limitations long enough (almost 2.5 years) to render his petition timely is based upon multiple layers of unsubstantiated inferences or assumptions.

not file his petition until April 14, 2014, almost two and a half years beyond the period of limitations. As such, unless equitable tolling is appropriate or Harris is entitled to begin calculating the statute of limitations from an alternative date, his petition should be dismissed as time-barred.

**B.  Factual Predicate**

Pursuant to 28 U.S.C. § 2244(d)(1)(D), the statute of limitations may commence later than the date when a petitioner's conviction became final if "the factual predicate of the claim or claims presented" was not discovered by a petitioner, acting with due diligence, until a later date. Harris has not argued that the factual predicate of his claims could not have been discovered until a later date. (ECF Nos. 1 & 20.) Furthermore, such an argument would be unreasonable in light of Harris's grounds for relief. First, the factual basis of the argument that Harris's convictions were not supported by sufficient evidence was known or discoverable by Harris no later than the conclusion of his trial. As to Harris's actual innocence claim, Harris has not pointed to any new, reliable evidence of his innocence that he was unable to obtain or discover until sometime after his conviction became final. (ECF No. 20.) Ground three, alleging equitable tolling, does not raise a free-standing habeas claim. Finally, in grounds four and five, Harris fails to explain when he became aware of appellate counsel's alleged ineffectiveness.[5] *Id*. As such, there is no reasonable

---

[5] It bears noting that Harris's appeal was denied by the state appellate court on March 22, 2010. He represented himself *pro se* before the Ohio Supreme Court, as the right to counsel does not extend to discretionary appeals. The federal habeas statute of limitations did not start running until November 24, 2010, ninety days after the Supreme Court of Ohio dismissed his appeal. As such, Harris had 247 days to discover his appellate counsel's alleged ineffectiveness. Notably, Harris was not in segregation or lock-down during any of this time per his own affidavit. (ECF No. 1 at 7.) As such, Harris cannot reasonably argue that the factual predicate of his ineffective assistance of appellate counsel claims could not have been discovered in this time span through the

basis for finding that a later start date is justified.

**C.    Equitable Tolling and/or State Created Impediment**

Harris does raise a tolling argument in his Petition and Traverse. *See, e.g., Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) (holding that a petitioner bears the burden of proving that equitable tolling is applicable); *Anderson v. Brunsman*, 562 Fed. App'x. 426, 430 (6th Cir. 2014) ("The burden is on [the petitioner] to show he was entitled to [equitable tolling].") In his petition, Harris asserts that he was in "segregation" and/or "lock-down" from January 19, 2011 until October 29, 2013. (ECF No. 1 at 7.) Harris further states that, during this period, he had "no, or very minimal access" to legal materials. *Id*. at 3.

Both Harris and the Respondent cite the five-factor test from *Dunlap v. United States*, 250 F.3d 1001, 1008 (6th Cir. 2001) as setting forth the circumstances where equitable tolling is appropriate.[6]  (ECF No. 19 at 12; ECF No. 20 at 7.)  "The *Dunlap* standard is no longer good law." *Plummer v. Warren*, 463 Fed. App'x. 501, 504 (6th Cir. 2012); *accord Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 750 (6th Cir. 2011) ("*Holland*'s two-part test has replaced *Dunlap*'s five-factor inquiry as the governing framework in this circuit for determining whether a habeas petitioner is entitled to equitable tolling.") As such, in order to be entitled to equitable tolling, Harris must establish "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560

---

exercise of due diligence.

[6] Under *Dunlap*, a court was to consider the following factors: "(1) the petitioner's lack of notice of the filing requirement; (2) the petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing his claim." 250 F.3d at 1008.

U.S. 631, 649 (2010) (internal quotation marks omitted). A court should be "much less forgiving . . . where the claimant failed to exercise due diligence in preserving his legal rights." *Vroman*, 346 F.3d at 605, *quoting Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); *accord Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003); *Garrison v. Warren Corr. Inst.*, 1999 U.S. App. LEXIS 13314 (6th Cir. Jun. 10, 1999).

Respondent construes Harris's argument as one made pursuant to 28 U.S.C. §2244(d)(1)(B), which states that "[t]he limitation period shall run from ... the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action." (ECF No. 7 at 11-14.)

In an affidavit attached to his petition, Harris avers the following:

> That Equitable Tolling should be applied to Petitioner's 2254 Habeas petition in light of his tenable actual-innocence claim: as well as the fact that from January 19, 2011 to October 29, 2013, the Department of [Rehabilitation] and Corrections of Ohio placed Petitioner under prison lock-down status: where petitioner was denied access to legal document copying service and denied access to the prisons' law library legal research material.

> The Ohio Supreme Court declined to accept jurisdiction to hear my appeal on August 25, 2010. Thus, the one year under 28 U.S.C. § 2244 did not begin to run until 8/26/2010. Yet, I was placed on segregation lock-down in Trumbull Corr. Inst. from 1/19/2011 to 8/3/2011; then 4-B lock-down in Mansfield Corr. Inst. from 8/3/2011 to 12/27/2011; then from 12/27/2011 to 5/31/2012 I, while remaining under 4-B lock-down status was transferred to Southern Ohio Corr. Inst.; then on 5/31/2012 I, while remaining under 4-B lock-down, was transferred to Ohio State Penitentiary where I remained until 10/29/2013. I was then transferred here to Lorain Corr. Inst. under non-lock down status of 3-B: where for the first time since January 1, 2011 I was permitted by prison officials to regain access to legal document copying service and actual access to [much needed] legal research, and case law, material contained within the prisons' law library.

> Thereby, the Equitable Tolling Provision should justifiably be applied to the time

> periods between January 19, 2011 thru October 29, 2013: simply in light of the, above, impediment placed on me by the State Prison Authorities: which denied me meaningful access to the courts.

(ECF No. 1.)

Along with her Return of Writ, Responded attached the sworn affidavit of Darnell Brady, a paralegal at the Ohio State Penitentiary ("O.S.P.") for the past thirteen years, including the almost eighteen month time period between May 31, 2012 through October 29, 2013 during which Harris alleged that he was housed at said institution without access to the law library or legal research materials. (ECF No. 7-29.) Mr. Brady stated that his duties included "providing legal research and assistance to the inmates housed at the institution, delivering library services requested by the inmates, and helping maintain the library services at the institution." *Id*. Mr. Brady explained that "[n]o inmates at O.S.P.,a maximum security prison, have physical privileges to the library; Instead, all library services are provided to the inmates by delivery to their cells. The institution provides the inmates the required legal research material, upon asking, including electronic research materials, no matter the security level of an inmate and no matter where the inmate is housed at the institution. No inmate is denied library privileges at O.S.P. based upon their security level." *Id*. Finally, Mr. Brady also asserted that between May 31, 2012 through October 29, 2013, "no inmate was denied access to the library services at O.S.P." *Id*.

Respondent further attached several written policies of the Ohio Department of Rehabilitation and Corrections ("O.D.R.C."). Pursuant to Policy No. 58-LIB-01 § IV, inmates assigned to segregated status are classified as "special population." (ECF No. 7-25, Exh. 25.) "All inmates shall be afforded access to institution library services." 58-LIB-01 § VI(B)(1). Consistent with Mr. Brady's affidavit, Policy No. 58-LIB-01 § VI(B)(3)(a) also states that:

> All inmates assigned to special population status shall have access to reading materials, either through delivery of materials or the availability of an on-site collection. Such inmates shall also be provided with legal reference resources pursuant to Department Policy 59-LEG-01 .... In institutions where paralegal staff is employed, the paralegal shall provide legal information to inmates in segregation who request information pertaining to their individual legal cases.

(ECF No. 7-25, Exh. 25.)

Harris's traverse offers no contrary evidence to substantiate his self-serving affidavit. (ECF No. 20.) Harris makes no argument that the aforementioned policies were not followed, nor does he state that he requested but was denied access to legal materials. Because Harris has failed to establish that he was prevented from receiving legal materials during the relevant time, the Court finds that he has failed to establish that he pursued his rights diligently, and also failed to show that some extraordinary circumstance stood in his way preventing a timely filing. Finally, even though Harris's access to the law library and other legal materials was more restricted than general population inmates, that alone does not entitle him to equitable tolling. *See, e.g., Hall*, 662 F.3d at 752 ("[Petitioner's] inability to access the transcript of his trial is unfortunate. But it is not enough, even in combination with his *pro se* status and **limited law-library access**, to warrant the equitable tolling of AEDPA's limitations period."); *accord Jones v. United States*, 689 F.3d 621, 627 (6th Cir. 2012) ("Generally, to qualify as 'extraordinary circumstances,' the petitioner must show more than just his status as *pro se* or his limited access to a law library."); *Hawkins v. Warden, Ross Corr. Inst.*, 2015 U.S. Dist. LEXIS 30173 (S.D. Ohio Mar. 11, 2015) ("A prisoner's *pro se* incarcerated status, lack of knowledge regarding the law, and limited access to the prison's law library or to legal materials together or alon[e] do not provide a sufficient justification to apply equitable tolling of the statute of limitations."); *Thomas v. Tibbals*, 2014 U.S. Dist. LEXIS 135813

-13-

(N.D. Ohio Sept. 3, 2014).

Harris has failed to satisfy his burden of demonstrating that he is entitled to equitable tolling, without which, the instant petition is untimely.

**D. Actual Innocence**

Harris is not entitled to equitable tolling based solely on his claim that he is innocent. He has presented no new, reliable and trustworthy evidence. He does argue that evidence outside the record demonstrates that the victim had once falsely accused him of domestic violence and avers that she was almost charged with lying to prosecutors. (ECF No. 20 at 16-19.) The Court previously disallowed the expansion of the record, finding as follows:

> On September 11, 2014, Harris filed a motion to expand the record, which Respondent, Warden Kimberly Clipper (hereinafter "Respondent"), opposed. (ECF Nos. 9 & 10.) Harris seeks to add to the record a prior allegation of domestic violence made by the victim, K.T., against Harris, which he alleges the police determined to be meritless. (ECF No. 9.) The Court finds that a previous allegation of domestic violence, which did not result in any charges in the present action, is wholly immaterial as to whether Harris's convictions violated clearly established federal law. In addition, said evidence is incapable of establishing Harris's actual innocence of the crimes of which he was convicted. Harris also asks that the record be expanded to include his visitors list, which he maintains will show that the victim "remains in close contact" with him. *Id*. Again, such evidence is irrelevant and immaterial.
>
> On October 31, 2014, Harris filed a second motion to expand the record, which Respondent again opposed. (ECF Nos. 13 & 14.) In his second motion, Harris seeks to add to the record an affidavit by an individual named William Gaddy. (ECF No. 13.) The affidavit states as follows:
>
>> On 3-26-08 Isaiah Harris SR. called me over to his house to get the kids cause [K.T.] and his girlfriend had a fight. When I get there I seen Isaiah's girlfriend waiting in the car. Isaiah SR. and Kenneth Tiller helped load the kids up into my car. I then went into the house to let [K.T.] [k]now the kids will be over my house until things cool off or until Isaiah gets back from dropping off his girlfriend at home. So Kenneth waited with [K.T.] until the police came and Isaiah droped [sic] off his girlfriend at home.

-14-

> While I took the kids to my house until things got straight.
>
> (ECF No. 13-1.)
>
> The content of Mr. Gaddy's affidavit is completely immaterial to any of Harris's claims, save for the domestic violence conviction stemming from the events of March 26, 2008. As to that, the affidavit merely rehashes Harris's assertion that K.T.'s injuries stemmed from an altercation between K.T. and a woman he was dating at that time. (ECF No. 13-1.) This argument is not new and was addressed in the state appellate court's opinion. *Harris*, 2010-Ohio-1081 at ¶2. Moreover, Gaddy's affidavit does not claim that he was an eyewitness to any altercation, and thus he has no first-hand knowledge as to what transpired. As such, the affidavit is irrelevant.

(ECF No. 15 at 2-4.)

Simply put, the evidence Harris would like to add now (and which he would have liked to present at trial) may or may not have had an impact on the trial judge's assessment of K.T.'s credibility. Issues of credibility are reserved to the finder of fact. None of the evidence which Harris believes should have been allowed at trial would support his claimed actual innocence.[7] His own statement that he is innocent is insufficient. *See Letsinger v. Steele*, No. 3:13-CV-484, 2013 WL 5936675, at *2 (E.D. Tenn. Nov. 4, 2013) ("Petitioner has offered no new evidence to support his claim of actual innocence... other than petitioner's self-serving statements, to suggest that petitioner is innocent of the crime to which he pleaded guilty."); *Smith v. Hudson*, No. 5:06CV2959, 2008 WL 2079386, at *3 (N.D. Ohio May 15, 2008) ("Petitioner, however, has

---

[7] To the extent Harris's traverse challenges the trial court's evidentiary rulings excluding evidence that he believes should have been admitted, errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding. *See e.g., Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001). Under the AEDPA, the states have wide latitude in ruling on evidentiary matters. *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001).

offered no evidence of his innocence beyond his self-serving statement that he did not commit aggravated menacing."); *Loza v. Mitchell*, 705 F. Supp. 2d 773, 893 (S.D. Ohio 2010) aff'd, 766 F.3d 466 (6th Cir. 2014) ("Loza's self-serving affidavit and letters are conclusory and do not set forth any operative facts that demonstrate his 'actual innocence.'"); *Gabriel v. Vasbinder*, No. CIV. 05-72428-DT, 2006 WL 2708554, at *4 (E.D. Mich. Sept. 20, 2006) ("Petitioner is not entitled to have the limitations period tolled because other than his unsupported, self-serving statements, petitioner has offered no affidavits or other documentary evidence in support of this claim of actual innocence."); *accord Griffith v. Birkett*, No. 05-72228-DT, 2006 WL 724579, at *5 (E.D. Mich. Mar. 17, 2006).

In the case at bar, Harris has failed to establish a cognizable actual innocence claim – ***as to the crimes for which he was convicted*** – because he has presented no new, reliable evidence.

### IV. Conclusion

For the foregoing reasons, it is recommended that this matter be DISMISSED as time barred.

/s/ *Greg White*
U.S. Magistrate Judge

Date: May 12, 2015

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**